ALVEY–FERGUSON CO. v. JOHN F. TROMMER EVERGREEN BREWERY.

(District Court, E. D. New York. September 22, 1913.)

1. PATENTS ☞328—VALIDITY—INFRINGEMENT.
    The Alvey patents, Nos. 790,811 and 881,042, relating to conveyors for boxes, etc., *held* valid and infringed.

2. PATENTS ☞82—EXPERIMENTAL USE AND EXHIBITION.
    Where the use of a device exhibited at a world's fair was only experimental, and tests then made were unsuccessful, there was no public use or sale, constituting an abandonment, so as to invalidate a patent application made over two years later.

In Equity. Suit by the Alvey-Ferguson Company against the John F. Trommer Evergreen Brewery. Decree for complainant.

See, also, 245 Fed. 762.

This is a suit by the Alvey-Ferguson Company against the John F. Trommer Evergreen Brewery for infringement of claims 1 to 7 and 12 of letters patent No. 790,811, granted May 23, 1905, and claims 1 to 12 of letters patent No. 881,042, granted March 3, 1908, to the complainant as assignee of Benjamin H. Alvey. This complainant also brought suit in Louisville, Ky., against the Falls City Brewing Company for infringement of the same patents, and during the taking of the testimony in the present case it was stipulated that certain parts of the testimony taken in that case should be read into this case. Although there was no appearance for the defendant at the hearing, its contentions were ably and elaborately considered in its expert testimony.

The complainant's patent No. 790,811 is clearly described by complainant's counsel substantially in the language of its expert witness Freeman, as follows:

"The Alvey patent, No. 790,811, relates to a conveyor system for automatically transferring boxes, barrels, and the like from place to place. While the boxes or similar articles are mainly transferred by their own gravity

along the system, it is frequently necessary or desirable that they be automatically elevated from one level to another, either for storage or in order that they may continue their travel by gravity to some distant point or points. The patent in suit, No. 790,811, relates more particularly to an automatic elevator mechanism adapted to co-operate with the gravity sections of such system.

"Generally speaking, the elevator comprises approximately horizontal end portions *40* and *50* (Fig. 2) and an intermediate portion *70* inclined with respect to the end portion and gradually merging into the end portions, which end portions are adapted to co-operate with the gravity sections *30* and *31*, to automatically receive the boxes or articles from the lower section *30* and automatically deliver them to the upper section *31* without undue shock and without requiring the services of an attendant; the whole being combined with a track or way or floor for properly supporting the boxes or articles, and with traveling means for conducting or propelling the boxes or articles along the track or way to elevate them from one gravity section to the other.

"In the particular embodiment disclosed in the patent, the elevator comprises a frame formed by transverse bars or straps *1*, having upwardly extending or bent ends *2*, and rigidly fastened to certain longitudinally extending angle irons. One pair of these angle irons, numbered *3* in the drawings, is secured directly to the transverse members, while another pair *4* is secured to the upwardly extending portions *2*. A third pair of angle irons *7* is secured beneath the transverse members *1* by means of angle pieces or brackets *5*, which are secured to the under sides of the transverse members *1*. The track or way or floor of the elevator is composed in part of rollers *11* journaled at their opposite ends in the upwardly extending portions of the first-mentioned pair of angle irons *3*, and in part of a relatively stationary portion *75*, composed of longitudinally extending bars *76*, which, as illustrated, are secured to transversely extending members *77*, which are illustrated as being supported upon the angle irons *3*. For the purpose of moving the boxes or articles over the floor of the elevator from the lower gravity section to the upper gravity section, traveling means in the form of a pair of chains *15* are provided, these chains being mounted upon pairs of sprocket wheels *16* and *17* arranged at opposite ends of the elevator; the upper stretches of the chains being guided upon the upper pair of angle irons *4*, and the lower stretches upon the lower pair of angle irons *7*.

"In order that the motion of the chains may be transmitted to the boxes in such manner as to reliably propel them over the floor of the elevator, the chains are connected at suitable intervals by transverse members *18a*, which, in the embodiment illustrated, are provided with rollers *18*. These transverse connections between the chains are termed 'flights' in the patent. The stationary portions *75* of the floor of the elevator are arranged at the point where the lower horizontal portion of the elevator gradually merges into the intermediate inclined portion, thus facilitating the change in the direction of the movement of the boxes or articles from the horizontal place of the lower section to the inclined plane of the intermediate section.

"For the purpose of properly guiding the chains with relation to the line of movement of the boxes or articles over the floor of the elevator, the lower sections *4a* of the upper pair of angle irons *4* are reversely arranged with relation to those sections which are opposite the inclined and upper portions of the elevator, so that the horizontal members of the sections *4a* are adapted to overlie the chains *15* and keep them down at the proper elevation with relation to the lower horizontal portion of the elevator, and the horizontal members of the angle irons *4* are adapted to underlie the chains and sustain them at the proper elevation with relation to the inclined and upper horizontal portions of the elevator. Similarly, the lower sections *7a* of the lower pair of angle irons are reversely arranged with relation to the upper sections of this pair of angle irons to properly guide and control the lower stretches of the chain.

"It will be understood that the chains are continuously driven from a suitable source of power, so that, whenever a box traversing the lower gravity

section of the conveyor arrives at the lower horizontal portion of the elevator, it will be automatically engaged by one of the transverse connections or flights carried by the chains, which will cause it to travel along and up the conveyor and then deliver it to the upper gravity section, and this without requiring the services or attention of an operator.

"While the object of the invention is generally stated in the second paragraph of the specification as 'the provision of certain improvements in elevators adapted to be used in systems for handling packages, whereby packages may be most expeditiously and safely elevated from one floor to another of a warehouse, for example,' the co-operation of the device with a gravity conveyor system is more particularly set forth as follows:

"In order that this elevator may be best adapted to form part of a conveying system wherein the packages are conveyed to it by a gravity conveyor, (indicated at *30* in Fig. 2), which runs around or through the room, and delivered by it to a similar gravity conveyor *31*, which runs around or through the room above, its end portions *40* and *50* extend at an angle with its intermediate part *70*, gradually merging from the horizontal to the angle of inclination of the said intermediate part, whereby the articles may be delivered to and discharged from the elevator without shock, and the portion of the elevator at the junction of its approximately horizontal bottom and inclined intermediate part is provided with a floor *75*, comprising stationary members *76*, instead of rollers, which preferably constitute the remainder of the floor of the elevator."

The claims of this patent which are alleged to be infringed are:

"1. An elevator comprising a frame having approximately horizontal end portions and its intermediate part arranged at an inclination with its said end portions and gradually merging into the same, rollers constituting a portion of the track or way, a stationary portion arranged at the junction of an end and intermediate portion of the frame, and traveling means for conducting the articles upward along said track or way.

"2. An elevator comprising a frame having approximately horizontal end portions and its intermediate part arranged at an inclination with its said end portion and gradually merging into the same, rollers constituting a portion of the track or way, a stationary portion arranged at the junction of an end and intermediate portion of the frame, means for conducting the articles upward along said track or way, and conveying means for conducting said articles to and from said elevator.

"3. An elevator comprising a frame having approximately horizontal end portions and its intermediate part arranged at an angle with its said end portions and gradually merging into the same, a frame arranged at the junction of an end portion and said intermediate part and forming part of the track or way, rollers arranged to form a part of said track or way, a pair of connected endless belts for conducting the articles along said track or way, and means for holding said belts down adjacent to the junction of said end and intermediate portions.

"4. An elevator comprising a frame having a series of members extending transversely thereof and provided with upwardly-bent ends, a pair of angle irons extending longitudinally of the frame at the sides thereof and secured to said series of members and a second pair of angle irons, extending longitudinally of the frame and secured to the bent end portions of the first-mentioned frame members, means supported by the first-mentioned pair of angle irons and forming the floor of said elevator, and a connected pair of traveling endless belts for conducting the articles along said floor, said belts engaging said second pair of angle irons.

"5. An elevator comprising a frame composed of a series of members extending transversely thereof and having upwardly-bent ends, a pair of angle irons extending longitudinally of the frame at the sides thereof and secured to said series of members, a second pair of angle irons extending longitudinally of the frame and secured to the bent end portions of the first-mentioned frame members, a series of angle irons each secured at one end to the said lower portion of the respective first-mentioned frame members and depending therefrom, and a third pair of angle irons extending longitudinally of the frame

and secured to the last-mentioned angle irons, means supported by the first-mentioned pair of angle irons and forming the floor of said elevator, and a connected pair of traveling endless belts for conducting the articles along said floor, said belts engaging said second and third pairs of angle irons.

"6. An elevator comprising a frame having a series of members extending transversely thereof and provided with upwardly-bent ends, angle irons secured to the upwardly-bent ends of said transverse members at each side of the device and so arranged that the horizontal portion at one end or place in the length of the frame will be inverted with respect to the horizontal portions of the angle irons at the other end or place in said length, a connected pair of endless belts the upper runs of which are held in proper plane of operation by said horizontal members, a pair of angle irons extending longitudinally of the frame at the sides thereof, and a floor supported by the same.

"7. An elevator comprising a frame composed of a series of members extending transversely thereof and having upwardly-bent ends, a pair of angle irons extending longitudinally of the frame at the sides thereof and secured to said series of members, a second pair of angle irons, extending longitudinally of the frame and secured to the bent end portions of the first-mentioned frame members and so arranged that the horizontal portions at one end of the frame will be inverted with respect to the horizontal portions at the other end of said frame, a series of angle irons each secured at one end to the said lower portion of the respective first-mentioned frame members and depending therefrom, and a third pair of angle irons extending longitudinally of the frame and secured to the last-mentioned angle irons, means supported by the first-mentioned pair of angle irons and forming the floor of said elevator, and a connected pair of traveling endless belts for conducting the articles along said floor, said belts being held in the proper plane of operation by the horizontal members of said second and third pairs of angle irons."

"12. An elevator comprising a frame having its sides provided with angle irons extending longitudinally thereof and each formed of sections located end to end in relatively reverse positions, a traveling conveying means comprising endless belts which are guided by said angle irons, and a track or way located between the upper and lower runs of said belts."

The complainant's patent No. 881,042, as described by the complainant's expert Freeman, is as follows:

"The Alvey patent, No. 881,042, as stated therein, 'relates to certain improvements in carriers or conveyors, and particularly to the type thereof shown, for example, in my patent No. 790,811 granted May 23, 1905.' In the automatic elevator mechanism described in the prior Alvey patent referred to, the flights of the conveying means will sometimes engage the under surfaces of the boxes or other articles, and carry them along over the lower horizontal portions of the elevator, and start them up the inclined portion, whereupon the boxes thus improperly engaged will slip off the ·flight and fall back against the succeeding flight, or a box propelled thereby, with some danger of injuring the contents of the box or boxes. The improvements of the later patent, No. 881,042, are mainly directed to the provision of means for preventing the boxes from being improperly conveyed or advanced by the flights to a point where there is any danger of injuring. the contents of the boxes by falling back in the manner stated."

The patentee points out the nature of these improvements as follows:

"My present invention therefore contemplates the provision of a conveyor with means which project into the path of travel of packages so as to be engaged by said packages, and as a principal function thereof are adapted to retard or resist the movement of packages which are not properly engaged with the propelling means of the conveyor, sufficiently to hold such packages against movement with the propelling means, and are further adapted to permit movement with the propelling means of packages which are properly engaged by the latter."

The particular embodiment of these improvements disclosed in the patent is aptly described in general terms by the patentee as follows:

"The means referred to, as herein shown and as preferred, comprise a pair of arms which project toward each other diagonally into the way or path of

travel of the packages from opposite sides of the way and control the movement of packages on the way. They have sufficient rigidity to resist direct onward movement of packages which are not properly positioned on the track or way, and are improperly engaged with the propelling means, while they are sufficiently elastic to yield to the pressure of suitably positioned packages which by reason of a proper engagement with the propelling means are being forcibly propelled along the way, such yieldability thereby permitting the packages to pass between the arms."

This embodiment is represented as being applied to the lower horizontal portion of an automatic elevator of the type illustrated in patent No. 790,-811, previously considered. As shown, the spring arms 26 and 27 are rigidly secured at their forward ends near the front end of the elevator frame and at opposite sides thereof, and they extend rearwardly or in the direction of movement of the boxes or packages from their rigidly secured forward ends and in diagonal directions across the lower horizontal part of the track or floor of the elevator so that the arms converge toward each other at their rear or free ends which terminate near the base of the inclined portion of the elevator. These arms are formed of spring metal, and, while they are sufficiently rigid to prevent a box which is improperly engaged by the elevator flights from passing beyond them, they will yield to permit the box or packages to pass between them when it is squarely engaged by one of the flights of the conveyor."

The claims of this patent involved in suit are:

"1. In a conveyor, a package propelling means having traveling devices to engage the packages and force the same along the conveyor, and means for retarding the movements of packages which are improperly engaged by said propelling means, and to permit the movement of such packages as are properly engaged therewith.

"2. In a conveyor, a package propelling means comprising endless traveling chains and devices extending transversely of the conveyor and connecting the chains with each other and adapted to engage the packages, and means for retarding the movement of packages which are improperly engaged by said devices, and to permit the movement of such packages as are properly engaged therewith.

"3. In a conveyor, a package propelling means having traveling devices to force the packages along the conveyor, and yieldable arms extending toward each other into the path of the packages and adapted to prevent movement of packages which are improperly engaged by said devices and to permit movement of such packages as are properly engaged therewith.

"4. In a conveyor, a frame comprising sides formed to provide guide ways, endless chains which travel in said ways, package engaging devices carried by said chains, and arms extending diagonally into the path of the packages, and adapted to prevent movement of such packages as are improperly engaged with said devices, said arms being yieldable to permit movement of packages which are properly engaged with said devices.

"5. In a conveyor, a carrier way provided with spring arms, extending inwardly from the sides thereof, and means for conveying the packages along said way and between said arms.

"6. In a conveyor, a carrier way having an inclined portion, means for conveying packages along said way, and yielding retarding means for the packages, arranged at or near the base of the incline.

"7. In a conveyor, a carrier way, having an inclined portion, means for conveying packages along said way, and yieldable arms extending toward each other end into the path of the packages, at or near the base of the incline.

"8. In a conveyor, a track or way, and arms arranged in the path of movement of packages on said track or way, said arms extending diagonally inward beyond the lateral boundaries of the track or way from opposite sides of the same and in the direction of movement of the packages.

"9. In a conveyor, a track or way, an endless traveling means arranged over the track or way and having devices to engage the packages and control the movement of the same on the track or way, and arms between which

the packages travel, said arms extending from opposite sides of the track or way, inward beyond the lateral boundaries thereof in the direction of the movement of the packages on the track or way.

"10. In a conveyor, the combination with a means for supporting packages, and devices traveling relatively to said means and controlling the movement of packages thereon, of means adopted to restrain the movement of packages until the traveling devices are in position properly to engage the same.

"11. In a conveyor, the combination with a means for supporting packages, and devices traveling relatively to said means and controlling the movement of packages thereon, of spring arms projecting into the path of the packages and adapted to restrain the movement of the same until the traveling devices are in position properly to engage the same.

"12. In a conveyor, a track or way, an endless traveling means arranged over the track or way and having devices to engage the packages and control the movement of the same on said tracks or way, and arms arranged in the path of movement of packages on said track or way, said arms extending inward into the track or way from the sides of the same and yieldable to permit packages to pass there between which are being forcibly propelled by said traveling means."

William A. Megrath, of New York City, for complainant.

VEEDER, District Judge (after stating the facts as above). [1] A comparison of the defendant's construction with that of the complainant leaves no doubt in my mind that the claims sued on are responded to substantially, and in most instances literally, by the defendant's construction. The differences pointed out by the defendant in the framework, in the substitution of a slide for rollers at the receiving end of the elevator, and the use of rollers *59* in the defendant's construction, are all immaterial changes, and do not depart from the substance of the complainant's invention, if there be such. The defendant's contention that the spring arms of its elevator are merely centering arms is not well taken. The spring arms employed by the defendant are identical with those illustrated in complainant's patent No. 881,042, and are correlated with the same elements essential to the production of the result obtained. The proof shows that the defendant's spring arms serve to prevent the movement upon the inclined section of the elevator of boxes riding upon the flights, retarding their movement until properly engaged by the succeeding flight.

Nor has the defendant succeeded in its direct attack upon the complainant's invention. None of the many prior patents and structures in evidence seems to me to anticipate the substantial advance in the art embodied in the claims in suit. Some of the elements of the patented structure may be old, but the result obtained by the combination and correlation was new and efficient beyond anything that had been known before. The evidence clearly establishes the utility and commercial value of the complainant's invention. The old method of handling heavy packages by hand trucks and straight lift or platform elevators was slow, ruinous to floors, involved much breakage, and required a great deal of manual labor and attendance. The complainant's structure overcame these disadvantages. Prior gravity carrier systems were limited in range to situations where packages were to be transferred to a lower level. The complainant's structure

eliminated such restriction. By its use packages are automatically transferred to points at the same or a higher or a lower level, irrespective of the distance between the delivery and receiving points, and this result is accomplished automatically by a single and simple mechanism, which is operated with a minimum of labor or attendance. It co-operates with the gravity conveyor sections without manual aid to receive packages without shock or jar from the lower sections, and without the necessity of any times relation between the periods of arrival of the packages at the elevator and the phases of movement of the propelling devices of the elevator. The elevator is always ready to perform its function as a part of the system. The complainant's structure is not to be dissected in an effort to discover anticipation in old and often crude devices designed for different purposes, and which are similar to the complainant's mechanism only in that they may be broadly termed inclined endless conveyors for elevating freight.

[2] Finally, the defendant raises an issue of abandonment by reason of alleged public use and sale for more than two years prior to the date of the application for patent No. 881,042. It is claimed that the spring arms covered by the patent had been used on a machine exhibited and put on sale by the complainant at the St. Louis World's Fair in 1904. I find from the evidence that the complainant's exhibit at the World's Fair included the elevator forming the subject-matter of patent No. 790,811 in suit, and that during part of the time it was exhibited with spring arms. But such use was experimental, and the tests then made were not successful. The elevator thus used was not on sale. At the close of the Fair this elevator was dismantled, shipped back to the complainant's factory, and was not again erected. It was not until January, 1906, that further experiments with spring arms were made, when, proving successful, an application for a patent therefor was filed on October 6, 1907. The construction covered by complainant's patent cannot, therefore, be said to have been in public use or on sale for more than two years prior to the date of application. The printed circular containing a reproduction of a photograph of the complainant's exhibit shows the spring arms; but inasmuch as they can hardly be discerned with the aid of a magnifying glass, and the circular contains no description of their construction and operation, it is clearly not such a publication as will invalidate the patent in suit.

The complainant may have a decree.